UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT G. THOMPSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0360** |
| **ST. TAMMANY PARISH HOSPITAL, DR. JAY GROVES, ST. TAMMANY PARISH JAIL, SHERIFF JACK STRAIN** | **SECTION "J"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915(e)(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On April 26, 2012, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. Nos. 16, 21. The plaintiff was sworn prior to testifying on both occasions. The Court's digital recording device failed to record the first hearing. Rec. Doc. No. 20. The second hearing was successfully recorded.

I.  **Factual Background**

   A.  **The Complaint**

The plaintiff, Robert G. Thompson ("Thompson"), is an inmate presently housed in the Dixon Correctional Institute ("DCI") in Jackson, Louisiana. Thompson filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against St. Tammany Parish Hospital Service District No. 1 ("St. Tammany Parish Hospital"), Dr. Jay Groves, the St. Tammany Parish Jail, and St. Tammany Parish Sheriff Rodney J. "Jack" Strain, Jr., complaining about a medical injury he sustained which led to amputation of part of his right foot.

Thompson alleges that, when he was booked into the St. Tammany Parish Jail, the officers took his socks from him because they were not white. He had to wear his shoes for about three weeks without socks. As a result, his right foot became infected.[3] He notified the prison staff, and he was told that there was nothing they could do for him.

He further indicates that, when he was released from jail, he went straight to the hospital. He claims that his right foot had already turned black with infection. He was placed on intravenous medication for a week, and the doctor told him it was too late. He underwent surgery and lost three of his toes and several bones in his foot.

As relief, he states that he wants the St. Tammany Parish Jail and the St. Tammany Parish Hospital to pay for the damage to his right foot.

   B.  **The *Spears* Hearing**

Thompson testified that, he is presently serving a 12-year sentence for his February 2010 conviction on the charge of aggravated incest. He also stated that, in October of 2007, he was

---

[3]Although Thompson did not specify which foot was affected, he did so in the relief portion of his complaint.

booked into the St. Tammany Parish Jail on those charges. He underwent a medical examination at the jail at which time he advised the officials that he was a diabetic. He also was required to turn in his clothes for his striped prison uniform. He also had to turn in his socks, because they were not white. As a result, he ended up wearing his shoes for about three weeks without socks. He remained housed in the holding cell during that time. He also claims that he asked for socks, but he did not receive them.

After about his third day in the holding cell, he was provided with his medication and insulin shots. After about six or seven days, he developed blisters on the second and third toes of his right foot. The foot turned black by the eighth day. He claims that he notified the officers and nurses several times. The nurse, whom he is unable to identify, told him that there was nothing they could do for him in the holding cell; he would have to wait until he was moved to the dormitory area to receive medical care.

Thompson reported that he was never moved, and after three weeks his mother and wife bailed him out. After that, he went straight to the St. Tammany Parish Hospital where he was admitted and treated by Dr. Jay Groves. Dr. Groves placed him on intravenous antibiotics for about one week. At that time, the doctor told him that the antibiotics were not doing any good, because gangrene had set-in. He underwent surgery, and Dr. Groves amputated his second and third toes. After several follow-up visits, Dr. Groves refused to continue treating him because Thompson was unable to pay his bill. Thompson was not working at that time.

At some point, his small toe on that foot became infected and turned black. He was treated by Dr. Daniel Rain,[4] who had to amputate the toe and other bones in the side of the foot.

Thompson stated that he sued Sheriff Strain, because he was advised to do so by another inmate. He stated that he did not speak with the Sheriff and did not know if the prison staff told him about his problems. He also indicated that he sued Sheriff Strain, because he runs the jail.

He also testified that he sued the St. Tammany Parish Hospital, because that was where Dr. Groves worked when he was treating Thompson. He also sued Dr. Groves, because he stopped treating him when Thompson did not pay the bill. Even after the relationship ended, Thompson believed that he was still under Dr. Groves's care, which meant he could not go back to work. He conceded that he was not dissatisfied with the quality of the care provided by Dr. Groves. He also indicated that he has been getting proper care for his foot since his return to jail.

### C. Motion to Dismiss filed by St. Tammany Parish Hospital

After the *Spears* Hearing was scheduled by the Court, the St. Tammany Parish Hospital filed a motion (Rec. Doc. No. 13) seeking dismissal of Thompson's claims against it for lack of subject matter jurisdiction and/or for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(1) and (6). The defendant argues that Thompson has failed to allege any allegation of tortious conduct by the hospital and to the extent he alleges negligent care, such a claim does not present a cause of action under §1983. Thompson has not filed an opposition to this motion.

---

[4]Spelled phonetically.

## II.  Standards of Review

### A.  Frivolousness

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### B.  Motion to Dismiss

The defendant, St. Tammany Parish Hospital Service District No. 1, has filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ.

5

P. 12(b)(6) for failure to state a claim upon which relief may be granted. In resolving a motion under either Rule12(b)(1) or Rule 12(b)(6), the same standard is applied and the court is generally limited to considering only those allegations appearing on the face of the complaint. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guidry*, 512 F.3d at 180 (quotation marks omitted). The United States Supreme Court also has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See Id*. Furthermore, the factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III. Review for Frivolousness

Before proceeding to the defendant's motion, the Court is called upon to conduct its statutory review for frivolousness of the *in forma pauperis* complaint under 28 U.S.C. § 1915 *et seq*.

Thompson testified at the *Spears* Hearing that he was placed in the St. Tammany Parish Jail in October of 2007 and within three weeks, his medical injury arose. Within one week after his release, he was brought to surgery to remove two toes on right foot. While he was still out of jail, before his September 2010 criminal trial, he had a second surgery to remove another toe and more bone from that same foot. Any § 1983 claims he may present here have prescribed for the following reasons.

Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)). In Louisiana, personal injury claims

are governed by La. Civ. Code art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.[5] *See Jacobsen*, 133 F.3d at 319 (citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)).

For purposes of calculating the limitations period, a § 1983 cause of action, similar to a Louisiana tort claim, accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. *Wallace*, 549 U.S. at 388; *Jacobsen*, 133 F.3d at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). The Supreme Court has held that prescription begins to run at the point when "the plaintiff can file suit and obtain relief." *Id*., at 388 (citations omitted).

Thus, for purposes of this lawsuit, Thompson would have had one year from the date of his injury or damage to bring both his § 1983, and any state tort claims, against the defendants. By his own allegations, he knew or should have known of his initial injury when he was called upon to have the first surgery one week after he spent three weeks in the St. Tammany Parish Jail in October of 2007. Affording him every benefit, by November 30, 2007, he knew that he had suffered injury to his foot that resulted in partial amputation of the toes and bone in his right foot. He would have had one year from that date, or until December 1, 2008,[6] to file this civil rights lawsuit.

The clerk of court for the United States District Court for the Middle District of Louisiana filed Thompson's complaint on January 30, 2012, when it was received prior to its transfer to this Court.[7] In the prisoner context, however, the date prison officials receive the complaint from the

---

[5]Article 3492 provides that: "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."

[6]November 30, 2008 fell on a Sunday.

[7]Rec. Doc. Nos. 1, 3, 4.

prisoner for mailing to the court is the time of filing for limitations purposes. *Cooper v. Brookshire*, 70 F.3d 377 (5th Cir. 1995). Thompson signed the pauper affidavit attached to his complaint on January 12, 2012, which is presumed to be the earliest date on which he could have given the pleadings to prison officials for mailing to the Middle District.[8]

Therefore, Thompson's complaint, deemed filed on January 12, 2012, was filed over three years after the limitations period expired on December 1, 2008. The Court also notes that, by his own admission, Thompson has been incarcerated and serving his sentence since his conviction in September of 2010. The events that occurred on the streets, including his follow-up medical care and second surgery, would have occurred prior to that date, which was still over 15 months before he submitted this complaint for filing.

Affording Thompson every benefit and calculation, any claims arising out of his three week incarceration in the St. Tammany Parish Jail in October of 2007 have prescribed. His complaint should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

**IV.     Defendant's Motion to Dismiss**

Because the Court has found that the claims raised against each of the defendants, including the St. Tammany Parish Hospital Service District No. 1, are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e, the Court need not consider the motion to dismiss filed by the St. Tammany Parish Hospital Service District No. 1. There remain no claims against that entity after the Court's statutory review, and the motion can be dismissed as moot.

---

[8]The documents were postmarked January 27, 2012.

## V. Recommendation

It is therefore **RECOMMENDED** that Thompson's § 1983 complaint against St. Tammany Parish Hospital Service District No. 1, Dr. Groves, the St. Tammany Parish Jail, and Sheriff Strain be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. §1997e.

It is further **RECOMMENDED** that the Motion to Dismiss filed by the St. Tammany Parish Hospital Service District No. 1 be **DISMISSED WITHOUT PREJUDICE** as moot.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[9]

New Orleans, Louisiana, this 22nd day of May, 2012.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[9] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.